UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 13-11427-GAO

ROBERT CROSSLEY,
Plaintiff,

v.

CAROLYN COLVIN,
Acting Commissioner, Social Security Administration,
Defendant.

OPINION AND ORDER
July 24, 2015

O'TOOLE, D.J.

## I.     Introduction

The plaintiff, Robert Crossley, appeals the denial of his application for Supplemental Security Income ("SSI") benefits by the Commissioner of Social Security ("Commissioner"). Crossley applied for SSI benefits on November 16, 2009, claiming he had become disabled on July 9, 2009. (Administrative Tr. at 11 [hereinafter R.].)[1] Crossley's application was denied at the initial level of review on July 23, 2010, and upon reconsideration on October 13, 2010. (Id.) On November 19, 2010, Crossley filed a written request for hearing before an Administrative Law Judge ("ALJ"). (Id.)

The hearing was held on March 9, 2012 before ALJ Constance Carter. (Id. at 21-49.) Crossley was represented by attorney William Gately at the hearing, at which Crossley and a vocational expert provided oral testimony. (Id.) On March 30, 2012, the ALJ issued a written

---

[1] The administrative record has been filed electronically (dkt. no. 11). In its original paper form, its pages are numbered in the lower right-hand corner of each page. Citations to the record are to the pages as originally numbered, rather than to numbering supplied by the electronic docket.

decision finding that, although Crossley could no longer perform his past relevant work, there were other jobs he could still perform. (Id. at 16-17.) Accordingly, the ALJ determined that a finding of "not disabled" was appropriate. (Id. at 17.) The Appeals Council denied Crossley's request for review on April 12, 2013. (Id. at 1-3.)

Before the Court is Crossley's Motion for Judgment reversing the Commissioner's decision (dkt. no. 13) and alternatively the Commissioner's Motion for Order Affirming the Decision (dkt. no. 15). The Court now affirms the Commissioner's decision because there is substantial evidence in the administrative record to support it and no error of law was made.

## II.   Background

Crossley was fifty-one years old when he applied for SSI benefits. He has a high school education. Before the alleged onset of disability on July 9, 2009, he worked as a housepainter. (Id. at 16.) Crossley claims he is disabled from a combination of hypertension and impairments following surgery to his wrist. (Id. at 13.)

### A.   Medical History

In July 2009 Crossley suffered a fall that fractured his right wrist. (Id. at 184.) The injury required realignment surgery in August and hardware removal in September 2009. (Id. at 181, 209-11). Prior to the fall, he had a history of hypertension and a right arm crush injury requiring nerve and tendon repair. (Id. at 184.)

### B.   The ALJ's Decision

The ALJ's opinion tracked the five-step sequential evaluation process mandated by 20 C.F.R. §§ 404.1520(a) and 416.920(a) to determine whether Crossley was disabled. (Id. at 11-17.) In Crossley's case, the ALJ determined that Crossley was not disabled at step five. (Id. at 17.)

At the first step, the ALJ determined that Crossley had not engaged in "substantial gainful activity" since November 16, 2009, his application date. (Id. at 13.)

At the second step, the ALJ must determine whether the claimant has a "severe medically determinable physical or mental impairment" that also meets the duration requirements. 20 C.F.R. § 416.920(a)(4)(ii). The ALJ found that Crossley had a severe impairment, "status post right wrist surgery." (R. at 13 (citing 20 C.F.R. § 416.920(c)).) She also found that Crossley's other claimed impairment, hypertension, was not "severe." (Id.) Crossley does not challenge the latter conclusion in this appeal.

Step three, like step two, considers the severity of the alleged impairment. 20 C.F.R. § 416.920(a)(4)(iii). The ALJ found that Crossley's impairment did not meet or medically equal a listed impairment[2] and therefore proceeded to assess his Residual Functional Capacity ("RFC")[3] before reaching step four. (R. at 13.)

The ALJ found that Crossley had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), except that

> the claimant can occasionally push and/or pull with his right upper extremity, he can never climb ladders, ramps or scaffolds, he can never crawl, he can occasionally climb ramps or stairs and he can occasionally balance, stoop, kneel, crouch or crawl, he can occasionally grasp and twist with his right hand and he can perform occasional fine manipulation with his right hand.

(R. at 13-14.)

At step four, the claimant's RFC is compared with past relevant work to determine if the claimant is able to resume that work. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is able to

---

[2] See 20 C.F.R. Part 404, Subpart P, Appendix 1.
[3] A claimant's residual functional capacity is determined "based on all the relevant medical and other evidence in [claimant's] case record, as explained in 20 C.F.R. § 416.945." 20 C.F.R. § 416.920(e).

resume past relevant work, he is determined to be not disabled. Id. If the claimant is unable to resume past relevant work, the inquiry proceeds to the fifth step. Id. A vocational expert was asked to evaluate Crossley's past relevant work, age, education, and RFC. (R. at 38-45.) The expert indicated that in his present condition, limited to light work only, Crossley would be unable to perform his past work as a housepainter. (Id. at 40.) Consistent with this opinion, the ALJ found that Crossley was unable to perform his past relevant work. (Id. at 16.)

At the fifth and final step, the claimant's RFC, age, education, and work experience are considered to determine if he is capable of performing other work currently available in the national and regional economy. 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c). If the claimant can make an adjustment to other work, and such other work is sufficiently available in the national and regional economy, the appropriate finding is "not disabled." Id.

The vocational expert testified that a number of jobs in the national economy existed for someone with Crossley's age, education, work experience, and RFC. (R. at 40-44.) The ALJ accordingly found that Crossley was capable of making a successful adjustment to other work. (Id. at 16.) The ALJ accepted the vocational expert's testimony that Crossley would be able to perform the representative occupations of greeter[4] or usher.[5] (Id. at 16-17.) The ALJ also noted the expert's testimony that even if Crossley were more limited than the ALJ had credited in determining his RFC, such that he "were unable to do any lifting with his right upper extremity at all, he would still be able to perform work as a greeter or usher." (Id. at 17.) Relying on this testimony, the ALJ concluded that Crossley was not disabled. (Id.)

---

[4] DOT No. 349.667-014; 71,000 such jobs in the national economy and 380 such jobs in Massachusetts. (R. at 17, 40-41.)
[5] DOT No. 344.677-014; 107,000 such jobs in the national economy and 2,000 such jobs in Massachusetts. (Id. at 17, 41.)

**III.    Standard of Review**

When reviewing a denial of SSI benefits, the Court will uphold the ALJ's decision when it is supported by substantial evidence. Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001). Substantial evidence exists, and the ALJ's findings must be upheld, if "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the ALJ's] conclusion." Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). The ALJ's conclusion must be upheld, when supported by substantial evidence, "even if the record arguably could justify a different conclusion." Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987). Deciding upon issues of credibility is the "prime responsibility" of the ALJ. Rodriguez v. Celebrezze, 349 F.2d 494, 496 (1st Cir. 1965). The ALJ may rely on the opinions and findings of multiple physicians to ascertain the pertinent medical facts. See Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987). 20 C.F.R. § 416.927 vests the ALJ with the responsibility to draw the ultimate conclusion as to whether the applicant is disabled.

**IV.    Discussion**

Although Crossley asserts that he only challenges step five (Brief Supp. Mot. for J. at 4 (dkt. no. 13-1)), his objections all go to the intermediary determination of his RFC. In essence, he argues that the ALJ's final decision was not based on substantial evidence because his RFC was in fact more limited, since he could do no lifting with his right arm or hand. Crossley does not challenge the ALJ's finding that he can do light work in other respects, such as with his left arm and hand, or by standing, walking, or sitting. Specifically, Crossley complains that the ALJ erred in discrediting his testimony and improperly resolved conflicting medical evidence. He also suggests that the vocational evidence was insufficient because it was based on an improper RFC.

Finally, he claims that he should be awarded benefits at least as of April 18, 2013, when he reached age fifty-five.

### A.    Plaintiff's Credibility

Crossley claims that the ALJ erred in assessing his credibility, finding that his "statements concerning the intensity, persistence and limiting effects of those symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (R. at 14.) As noted above, assessments of credibility are the "prime responsibility" of the ALJ. Rodriguez, 349 F.2d at 496. "The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings." Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987). Here, the ALJ properly assessed Crossley's testimony in the context of his daily activities, the expert medical opinions, and the rest of his medical history. 20 C.F.R. § 416.929(a).

Significantly, even if the ALJ had credited Crossley's testimony and made a finding of total inability to use his right arm and hand, her conclusion remained unchanged. The light-level jobs relied on by the ALJ at step five typically require little or no use of the right arm or hand (R. at 41-45). The ALJ's examination of the vocational expert was careful in eliciting this fact, and the ALJ explicitly noted in her decision that "even if the claimant were unable to do any lifting with his right upper extremity, he would still be able to perform work as a greeter and as an usher." (Id. at 17).

B.   Conflicting Medical Evidence

Crossley suggests that the ALJ erred in failing to credit the opinion of his treating physician Dr. Mistikawy that Crossley could lift nothing with his right hand. (Brief Supp. at 5 (citing R. at 235-41).)[6] He objects to the ALJ's instead giving significant weight to the opinion of Dr. Gopal, a state agency physician, in finding that Crossley retained the capacity to perform fine manipulations and moderate occasional lifting. (See R. at 226-33.)

Again, this challenge lacks merit because the jobs of greeter and usher upon which the ALJ relied at step five require no lifting. The ALJ explicitly posed a hypothetical to the vocational expert that assumed the correctness of Dr. Mistikawy's opinion. The availability of the representative jobs remained unchanged. (Id. at 43-44.)[7]

Even were the ability to lift dispositive, the ALJ's evaluation of the medical evidence was appropriate. The ALJ may rely on the opinions of non-examining sources to determine a claimant's RFC and need not to give greater weight to the opinions of treating physicians. Arroyo v. Sec'y of Health & Human Servs., 932 F.2d 82, 89 (1st Cir. 1991). The ALJ may "downplay the weight afforded a treating physician's assessment of the nature and severity of an impairment where . . .

---

[6] Crossley relies on the physician's RFC assessment. Although the physician name is unclear from the signature, the ALJ confirmed at the hearing that it is that of Dr. Mistikawy. (R. at 34.) The RFC assessment does not state, as Crossley asserts, that he can do no fine or close manipulations. Instead, it indicates that his manipulative abilities as to the right hand are limited.

[7] The ALJ's examination of the vocational expert included the following:
   Now, Dr. Mistikawy is telling me, in his opinion, that this individual cannot do any lifting with the right hand. I'm sorry to add another one, but let's just do that to cover all the bases. Okay. If this hypothetical person could perform no lifting with the upper extremity, would that impact on these jobs?
   [Vocational expert:] Not on the greeter and the usher; those jobs do not require any lifting.
(R. at 43-44.) In response, Crossley's attorney attempted to elicit from the expert that some use of the right hand would be necessary, such as reaching for the floor, getting a cart for a customer, or filling out reports or logs. The expert answered that these were not essential job duties. (Id. at 44-45.)

it is internally inconsistent or inconsistent with other evidence in the record including treatment notes and evaluations by examining and nonexamining physicians." Arruda v. Barnhart, 314 F. Supp. 2d 52, 72 (D. Mass. 2004). Here, the ALJ explained that she did not credit Dr. Mistikawy's opinion as to lifting ability because it was not supported by objective clinical findings and was inconsistent with Crossley's medical record. (R. at 15-16.) This was proper weighing of medical opinions under 20 C.F.R. § 416.927(c).

According to the Administrative Record, Dr. Mistikawy saw Crossley five times between May and December 2011. (R. at 242-51.) In his office note of May 19, under the category "Musculoskeletal," he noted "No joint aches or pains." There is no reference in the note to any hand issue. His attention seemed more focused on Crossley's apparently controlled hypertension. (Id. at 250-51.) Dr. Mistikawy's note of July 20 indicates that Crossley complained of wrist pain, a report that Dr. Mistikawy confirmed on examination. However, there is no reference to the issue in the summary "Assessment/Plan." (Id. at 248-49.) On August 18, Dr. Mistikawy noted "much more weakness on the right hand and fist and numbness to the fingers." (Id. at 246.) On this occasion, the "Assessment/Plan" included notation of "pain and injury and difficulty moving his hands and wrists," and recommended "over-the-counter medication anti-inflammatory as needed." (Id. at 247.) A note for a September 20 visit indicates that Crossley reported "pain and some swelling over the left elbow area no injury" that he was apparently treating with over-the-counter medication. Under "Musculoskeletal," Dr. Mistikawy noted "Pain over the elbow and some swelling," and his examination confirmed "Some tenderness over the elbow joint collection around the joints consistent with bursitis." His "Assessment/Plan" included notation of "tendinitis and bursitis" and "anti-inflammatory as needed." The note makes no specific reference to Crossley's hands, particularly his right hand. (Id. at 244-45.) A note for a December 21 visit records under

"Chief Complaint/History of Present Illness" that Crossley appeared "for follow-up today doing okay was seen by orthopedic surgery the swelling over the elbow is much better medication did help and no need for any intervention." On examination, Dr. Mistikawy noted "Tenderness over the hand scar of previous surgery limited range of motion over the hand." The "Assessment/Plan" recorded "history of arthritis over the fingers and the hand" and recommended "pain medication as needed." Under "Medications" the note indicates that Crossley was taking aspirin (as well as an anti-hypertension medicine). (Id. at 242-43.) In his RFC assessment of Crossley, also dated December 21, Dr. Mistikawy handwrote under "External Limitations" "No lifting with Rt hand," without further elaboration. (Id. at 236.) Crossley's argument focuses only on the RFC statement. It is apparent that the ALJ considered that statement in the light of the medical record.

The ALJ found that "medical evidence of record does not support the extent of the limitations alleged." (Id. at 14.) That was not an unreasonable assessment of the medical record. While Dr. Mistikawy's office notes reflect that Crossley had pain and functional limitation in his right hand, they do not necessarily support a finding of limitation to the degree claimed. Additionally, while the office notes are not inconsistent with Dr. Mistikawy's summary RFC assessment, it would be reasonable to think that read in light of the notes, the assessment is at the very least ambiguous.

### C.   Vocational Evidence

Crossley does not object to the vocational evidence itself, but rather to the hypotheticals posed based on an allegedly improper RFC. Crossley also appears to suggest he will have multiple unexcused absences, which according to the vocational expert would mean there are no jobs available. As stated above, the ALJ explicitly questioned the vocational expert about the availability of jobs if no lifting were possible. Thus she ascertained that the representative jobs

would be available even if the RFC were as limited as Crossley claims. There was no error. As to unexcused absences, Crossley has offered no evidence that his impairment would require this additional limitation and did not assert such a limitation when testifying. Crossley's failure to object to the hypotheticals at the hearing forecloses an attack on them now. See Torres v. Sec. of Health & Human Servs., 870 F.2d 742, 746 (1st Cir. 1989).

### D. Fifty-Fifth Birthday

Finally, Crossley argues that because he reached age fifty-five on April 18, 2013, at the very least he should be awarded SSI benefits effective that date. He misunderstands the application of the Medical Vocational Guidelines, also known as the "Grid," set out at 20 C.F.R. Part 404, Subpart P, Appendix 2. Under the Social Security regulations, age is considered a vocational factor and is assessed in categories. Ages fifty-five and above are considered "advanced age," while ages fifty to fifty-four are "approaching advanced age." 20 C.F.R. § 416.963(d), (e). The operative date for purposes of determining age is the date of the Commissioner's decision. Justice v. Astrue, 589 F. Supp. 2d 110, 111 (D. Mass. 2008); Barrett v. Apfel, 40 F. Supp. 2d 31, 38 (D. Mass. 1999) (otherwise "courts constantly would be remanding decisions as individuals aged through the appellate process.")

On March 30, 2012, the date of the ALJ decision, Crossley was fifty-three. Although the ALJ appears to have calculated age at the date of application, when Crossley was fifty-one (R. at 16), that error is harmless because it does not change the age category for purposes of the regulations. The ALJ was therefore correct in treating Crossley as "approaching advanced age" and relying on Rule 202.13 of the Grid, rather than Rule 202.04 as urged by Crossley. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.00 (Table No. 2).

**V.**     **Conclusion**

For the reasons stated herein, the plaintiff's Motion for Judgment on the Pleadings (dkt. no. 13) is DENIED, and the Commissioner's Motion for an Order Affirming the Commissioner's Decision (dkt. no. 15) is GRANTED. The Decision is AFFIRMED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge
